# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRIS WASHINGTON-EL, | : |
| | : Civil No. 3:12-CV-1979 |
| Plaintiff | : |
| | : (Judge Nealon) |
| v. | : |
| | : (Magistrate Judge Carlson) |
| ROBERT COLLINS, et al., | : |
| | : |
| Defendants | : |

## REPORT AND RECOMMENDATION

### I. Statement of Facts and of the Case

This is a *pro se* civil rights action brought by a state prisoner, Chris Washington-El, through the filing of a complaint on October 3, 2012, (Doc. 1.), which Washington-El subsequently amended on October 17, 2012. (Doc. 7.) This amended complaint is a carefully-detailed 24 page document, which details factual averments and legal claims in 204 separately numbered paragraphs. (Id.)

In this comprehensive complaint, Washington-El protests the conditions of his disciplinary housing over a number of years at the State Correctional institution (SCI) Frackville, while he was in administrative custody on the Restricted Release List (RRL). (Id.) Specifically, Washington-El alleges in some detail that during this two-year span prison officials retaliated against him because of his advocacy on behalf of himself and others; denied him due process during periodic assessments of his RRL housing status; held him for a prolonged period under conditions that allegedly

amounted to cruel and unusual punishment and violated Washington-El's rights under the Eighth Amendment to the United States Constitution; and unlawfully curtailed the exercise of his religious rights by denying him access to religious service by television for a prolonged period of time. (Id.)

Despite the very detailed nature of Washington-El's allegations, the defendants have now moved to dismiss the complaint in its entirety, arguing that Washington-El's claims are time-barred and that Washington-El has failed to state a claim upon which relief may be granted. (Doc. 18.) This motion is fully briefed by the parties, (Docs. 19 and 23.), and is ripe for resolution. For the reasons set forth below, with the exception of isolated claims which we find fall beyond the statute of limitations, we recommend that this motion to dismiss be denied.

## II. Discussion

### A. Motion to Dismiss-Standard of Review

In federal litigation, the procedural posture of a case can often dictate the substantive outcomes of pre-trial motions. This is particularly true with respect to motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any

reasonable reading of the complaint." Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." Id. at 230. "A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist., 842 F. Supp. 2d 762, 769-70 (M.D.Pa. 2012). With respect to the benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir.2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209–10 (3d Cir. 2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009). The statement required by Rule

8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. Erickson v. Pardus, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." Fowler, supra, 578 F.3d at 211. "A complaint has to "show" such an entitlement with its facts." Id.

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, supra, 556 U.S. at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010)(quoting Iqbal, supra, 556 U.S. at 675 and 679).

### B. While Some of Washington-El's Averments May Be Time-Barred, None of His Substantive Claims Are Subject to Dismissal on the Pleadings

With our discretion cabined and confined to an assessment of whether this complaint alleges well-pleaded facts which, if true, may entitle Washington-El to relief

we have little difficulty in concluding that Washington-El has adequately pleaded his claims, with one exception.

That exception relates to the defendants' argument that certain specific averments made by Washington-El fall beyond the two-year statute of limitations prescribed by law for civil rights claims. It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa.C.S.A. § 5524. A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also, Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations. For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting

Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986)). See also Lake v. Arnold, 232 F.3d 360, 266-68 (3d Cir. 2000). Instead:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991). In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)). The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001).

Here, defendants argue that, giving Washington-El the benefit of the prisoner mailbox rule, he initiated the present action on September 30, 2012. Thus, any freestanding claims that arose prior to October 1, 2010, are time barred. In sum, according to the defendants, all claims arising from events listed in paragraphs 16 through 31 and 64 should be dismissed.

We agree. In this case, Washington-El complains about an array of matters, including some matters which commenced prior to October 2010, more than two years prior to the filing of this complaint. In every instance, the plaintiff appears to have attached a high degree of significance and permanence to the events set forth in this complaint. Thus, the complaint recites well-pleaded facts in his complaint which reveal that, to the extent these events entailed violations of the plaintiff's constitutional rights, those violations were known and recognized by the plaintiff when they first occurred, in some instances more than two years ago. Thus, these events plainly had the degree of significance and permanence which should have triggered the plaintiff's awareness of his duty to assert his rights. Therefore, in this case a straightforward application of the two-year statute of limitations also compels dismissal of this of certain claims predating October 2010 in this action as untimely.

Washington-El cannot save these time-barred claims by resort to the continuing violation theory since that tolling doctrine "will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998). Indeed, with respect to the controlling consideration relating to this equitable tolling doctrine, "the degree of permanence [of the injury, i.e.]-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his

rights," Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001), it is apparent that the plaintiff subjectively identified the gravity and permanence of these events when they occurred. Since more than two years then elapsed before Washington-El filed the instant complaint, the plaintiff simply cannot evade the bar of the statute of limitations on some continuing wrongs theory, since the wrongs, if any, committed here were fully known by Washington-El more than two years ago. Therefore, on the face of the complaint, these claims which pre-date October 2010 are all time-barred.

However, with respect to the balance of Washington-El's claims, at this time we find that the 24 page, 204 paragraph complaint alleges sufficient well-pleaded facts to state plausible claims for relief and, therefore, the complaint withstands this motion to dismiss. For example, in his complaint Washington-El alleges that for a span of years he has been held in restricted custody without any meaningful due process. Such allegations are sufficient to state a claim since in Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000) the Third Circuit concluded that "eight years in administrative custody, with no prospect of immediate release in the near future, is 'atypical' in relation to the ordinary incidents of prison life, and that Shoats' eight-year confinement subjects him to conditions that differ significantly from 'routine' prison conditions in Pennsylvania state institutions." Shoats, 213 F.3d at 144. In reaching that decision, the court relied on the record to find atypical and significant hardships had been placed upon the inmate:

> Shoats has been confined in virtual isolation for almost eight years. He is confined in his cell for 23 hours a day, five days a week, and 24 hours a day, two days a week. He eats meals by himself. His sole contact is with DOC officials, and has been denied contact with his family for almost eight years. He is prohibited from participating in any educational, vocational, or other organizational activities. He is prohibited from visiting the library.

Id.

Here, Washington-El alleges a similar level of deprivation over an extended period of time without due process. Such averments are sufficient to state a claim at this stage, where our consideration is limited to the well-pleaded facts set forth in the complaint. Whether the plaintiff can prove what he alleges must await another day.

Similarly, with our review confined to the claims set forth in the complaint, we find that Washington-El has sufficient stated an Eighth Amendment condition of confinement claim. "When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.' Hudson, 503 U.S. at 9, 112 S.Ct. 995." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000). In this setting, it is clear that:

> The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)). Conditions of prison confinement violate the

> Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)

Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003).

Thus, these claims also require proof of a both culpable state of mind, and objective proof of physical conditions of confinement which shock the conscious and depart from minimal civilized standards of life's necessities.

Moreover, while we agree with the defendants that isolated denials of amenities in prison do not rise to the level of cruel and unusual punishment in violation of the Eighth Amendment, see , e.g., Banks v. Mozingo, 423 F. App'x 123, 127-28 (3d Cir. 2011), citing Williams v. Delo, 49 F.3d 442, 444–47 (8th Cir.1995) (finding no Eighth Amendment violation where prisoner was placed in a strip cell without clothes, the water in the cell was turned off and the mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld) Laufgas v. Speziale, 263 F.App'x. 192, 198 (3d Cir. 2008); Stephens v. Cottey, 145 F. App'x 179, 181 (7th Cir. Aug.11, 2005) (holding no Eighth Amendment violation exists where prisoner spent three days without a mattress sleeping on a metal bedframe and five days with no bedframe sleeping on the floor); Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir.1980), we find that, fairly construed, this complaint does not allege isolated instances of denial of basic amenities. Rather, the complaint contends that these services have

-11-

been denied for many months and years, conduct which may rise to the level of a constitutional infraction.

We also conclude that factual disputes regarding the nature of the deprivations experienced by Washington-El and the motivations of the defendants preclude dismissal of the plaintiff's First Amendment RLUIPA and retaliation claims at this time. In this regard, we find that Washington-El has adequately articulated that he engaged in constitutionally protected activity ion terms of his advocacy on behalf of himself and others, and has sufficiently alleged well-pleaded facts that, if proven, would allow for a finding that he has been retaliated against because of this activity. We also find at this stage of the proceedings, where we are confined to an assessment of the pleadings, that Washington-El has sufficiently claimed interference with sincerely held religious beliefs to state First Amendment and RLUIPA claims.

As we view it, the defendants' challenges to these claims invite us to undertake a review of matters outside the pleadings, something we cannot do at this stage of these proceedings. Therefore, we recommend that the Court decline the invitation to dismiss these claims and parties, without prejudice to later consideration of these matters, if appropriate, in the context of a fully-documented motion for summary judgment.

## III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion to dismiss (Doc. 18.) is GRANTED, in part, and DENIED, in part, as follows:

1. All claims lodged by the plaintiff which pre-date October 2010 should be DISMISSED.

2. In all other respects the motion to dismiss should be DENIED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 29th day of July 2013.

                                                 ***S/Martin C. Carlson***
                                                 Martin C. Carlson
                                                 United States Magistrate Judge