**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRIS WASHINGTON-EL,** | : | |
| | : | **Civil No. 3:12-CV-1979** |
| **Plaintiff** | : | |
| | : | **(Judge Nealon)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ROBERT COLLINS, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.   Introduction and Procedural Background

For putative prisoner-plaintiffs in federal court the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), (PLRA) imposes important threshold obligations upon litigants.  In part, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

The PLRA also imposes responsibilities upon federal courts when addressing inmate lawsuits. Specifically, the PLRA has been interpreted to impose upon the court the responsibility to determine whether an inmate has exhausted his administrative remedies prior to the filing of a complaint, even if that determination requires the resolution of disputed facts. See Small v. Camden Cnty., 728 F.3d 265, 271 (3d Cir.

2013) (judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury). In this case we are called upon to perform this duty, imposed upon us by the PLRA, and ascertain whether the defendants have carried their burden of proof and persuasion on the affirmative defense that the inmate-plaintiff, Chris Washington-El, failed to fully and properly exhaust his administrative remedies prior to filing this lawsuit.

This is a *pro se* civil rights action brought by a state prisoner, Christopher Washington-El, through the filing of a complaint on October 3, 2012, (Doc. 1), which Washington-El subsequently amended on October 17, 2012. This amended complaint was a detailed 24 page pleading which set forth factual averments and legal claims in 204 separately numbered paragraphs. (Doc. 7.) In this amended complaint, Washington-El protested the conditions of his disciplinary housing over approximately two years at the State Correctional institution (SCI) Frackville, while he was in administrative custody on the Restricted Release List (RRL), before being transferred to SCI-Huntingdon. (Id.) Specifically, Washington-El alleged that during this two-year span prison officials retaliated against him because of his advocacy on behalf of himself and others; denied him due process during periodic assessments of his RRL housing status; held him for a prolonged period under conditions that allegedly amounted to cruel and unusual punishment and violated Washington-El's

rights under the Eighth Amendment to the United States Constitution; and unlawfully curtailed the exercise of his religious rights for a prolonged period of time. (Id.)

Following a period of discovery, the defendants filed a motion for summary judgment on all of Washington-El's claims. In this motion, the defendants focused a substantial portion of their argument on their contention that Washington-El failed to exhaust his claims pursuant to Department of Corrections policies, and that the claims were barred as a result. Upon consideration of this motion we found that, on the unique and disputed facts of this case, the defendants failed to demonstrate that they were entitled to summary judgment based upon Washington-El's alleged failure to exhaust. In particular, we observed that, although the defendants focused much of their argument on this issue, and submitted some evidence in support of this affirmative defense, Washington-El submitted countervailing documentary evidence showing that on at least one occasion in January 2011, he was affirmatively instructed by prison officials to grieve his claims administratively in accordance with DC-ADM 802, a manner of exhaustion that the defendants now contended was not consistent with Department of Corrections policy. Given the clear dispute in the record on this point, and the fact that Washington-El had submitted documentation that appeared to show that prison officials affirmatively told him to exhaust his claims in a particular way, we recommended that the defendants' motion be denied insofar as it sought entry

of summary judgment on all claims on exhaustion grounds alone. We also recommended that the Court remand this matter to the undersigned for purposes of conducting a plenary hearing, and preparing a report and recommendation, on the question of whether Washington-El exhausted any of his remaining claims.

The district court adopted this recommendation, and on remand we conducted an evidentiary hearing on the defendant's affirmative defense of failure to exhaust prison grievances. Following this hearing, and the submission of post-hearing briefs, this matter is now ripe for resolution.

For the reasons set forth below, and given the unique facts of this case, it is recommended that the district court deny the affirmative defense of failure to exhaust administrative remedies, since the evidence shows that Washington-El followed the course he was instructed to pursue by correctional officials in grieving this matter.

## II. Statement of Facts Regarding Exhaustion of Administrative Remedies

With respect to the issue of whether the defendants have carried their burden of proving that Washington-El failed to properly exhaust the administrative remedies available to him, the essential facts are as follows:

The plaintiff, Christopher Washington-El, is a state inmate who was housed at the State Correctional Institution, (SCI) Frackville, from November 2009 through July 2011. (Transcript Evidentiary hearing, (hereafter Tr.) pp.85-86.) During this period

4

Washington-El was held in administrative custody in the prison's Restricted Housing Unit (RHU). As an RHU inmate, Washington-El's privileges and amenities were restricted, and the nature of these RHU restrictions at SCI Frackville form the basis for a number of his legal claims in the instant case.

During the period relevant to this action, the Department of Corrections maintained distinct administrative processes for inmates to use to grieve issues relating to their conditions of confinement generally, which typically are pursued through the inmate grievance system, DC-ADM 804, and a separate policy relating to administrative custody procedures under DC-ADM 802, which was available for inmates to challenge initial and on-going administrative custody placement actions. (Doc. 105, Exs. A-D.) This administrative custody policy statement, DC–ADM 802, in turn, prescribed a three-tier review process for inmate grievances relating to their administrative custody status. Under DC–ADM 802 inmates were directed to first raise their concerns with the Program Review Committee (PRC) which oversees that institution's Restricted Housing Unit. Unresolved concerns could then be appealed in writing to the facility manager. Finally, inmates who were dissatisfied with the facility manager's response to an administrative custody dispute could appeal in writing to the Department of Corrections' chief hearing examiner. (Doc. 105, Ex. C.) While DC–ADM 802 prescribed this path for appeals of administrative custody decisions

during the period from 2009 through 2011, at the time that Washington-El was confined at SCI Frackville, this policy statement originally did not clearly identify what substantive matters were governed by DC–ADM 802. This ambiguity was later clarified on or about June 7, 2011, when DC-ADM 802 was amended to provide that this procedure was the exclusive policy or administrative remedy available to inmates in administrative custody to pursue any issue relating to the placement, duration, conditions, or other circumstances of their administrative custody.  (Id.)

In addition to DC–ADM 802, under a separate policy statement, DC-ADM 804, the Department of Corrections maintained a general grievance system that offered a three-phase grievance and appeals procedure.  (Doc. 105 Exs. A and B, DC-ADM 804.)  Pursuant to DC-ADM 804, inmates first file grievances with the Facility Grievance Coordinator at the facility where the events upon which the complaint is based occurred.  If the inmate is unsatisfied with the initial review of his grievance, he may appeal the decision to the Facility Manager (Superintendent).  Upon receiving a decision from the Superintendent, the inmate may file an appeal with the Secretary's Office of Inmate Grievances and Appeals (SOIGA) within 15 days of the Superintendent's decision. (Id.)

The DC-ADM 804 grievance process was implemented as a policy that articulated a formal grievance procedure, a "forum for review," and an avenue of

appeal. The DC-ADM 804 system was instituted to ensure that inmates had a general avenue to resolve specific problems, and provided that this administrative avenue consisted of an initial review and then two tiers of appellate review, imposing different levels of responsibilities on the inmates during each stage of the administrative process. In order to exhaust administrative remedies in accordance with this three-step process prescribed by DC–ADM 804, inmates must file grievances and appeals in the place, time, and manner that the DOC's administrative rules require. (Id., DC-ADM 804.)

The existence of these two parallel grievance systems, and the questions these parallel procedures created concerning the proper path for for administrative custody inmates like Washington-El to travel in grieving certain disputes with correctional staff, lies at the heart of this exhaustion claim. This question was cast in sharp relief by the parties in a January 2011 exchange between Washington-El, and Peter Damiter, the corrections superintendent's assistant at SCI Frackville during Washington-El's incarceration at that facility. (Tr. 7.) As the superintendent's assistant at SCI Frackville, Mr. Damiter was the prison grievance coordinator at this facility, and processed inmate grievances. (Id.) In the course of these duties, Mr. Damiter would also field questions from inmates regarding prison grievance processes and procedures.

On January 21, 2011,  Washington-El wrote to Mr. Damiter to clarify what forms he should use to challenge a myriad of issues he claimed to have with staff and his ongoing restrictive custody assessment and placement, stating:

> In terms of my AC having an adverse affect on my mental health, it being an adverse act of retaliatory treatment, my religious exercise and religious activities on AC, equal treatment and conditions of confinement on AC – should they be addressed through the 802 procedures , PRC and AC Appeals or by grievance?  Thank you for your attention in this matter and I'll wait to hear back from you.

(Doc. 115, Ex. G.)   On January 26, 2011, Mr. Damiter responded in writing to Washington-El's inquiry, stating: "All those issues are covered under the 802.  Your requests should be done at PRC and as previously been told your appeal rights are every 90 days by policy."  (Id.) Thus, with respect to these particular administrative custody concerns which now form the basis of many of Washington-El's claims in this lawsuit, Mr. Damiter's response directed Washington-El to use the administrative grievance path prescribed by DC–ADM 802.

Damiter and Washington-El also appear to agree that the choice of DC–ADM 802 as the administrative path to address these grievances as a practical matter foreclosed any subsequent review of these issues pursuant to the general grievance policy, DC–ADM 804.  This outcome is a natural consequence of the grievance deadlines imposed by DC–ADM 804. By the time that an administrative custody

inmate pursued relief under DC–ADM 802, the deadline for filing a grievance under DC–ADM 804 would have passed and that grievance would have been denied as untimely, making the general grievance procedure effectively unavailable to the prisoner. Indeed, Mr. Damiter acknowledged as much at the hearing conducted in this case, stating that if an inmate had pursued relied under DC–ADM 802, and then filed a tardy grievance under DC–ADM 804 he "would have rejected it." (Tr. p.36.)

In response to Washington-El's contention that he had been expressly instructed to utilize DC–ADM 802 in January 2011 to address these concerns relating to his long-term administrative custody housing, the defendants have advanced two factual assertions. First, relying on the recollection of Anthony Kovalchik, a deputy superintendent at SCI Frackville who participated in Restricted Housing Unit program reviews for Washington-El and records of those reviews, (Tr. 46-80; Doc. 105, Ex. H), the defendants contended that Washington-El never actually pursued any of these issues under DC–ADM 802, at the time he received this advice from Mr. Damiter in January of 2011.

This argument draws some support from evidence presented to the court by the defendants, but is also rebutted by other evidence tendered by Washington-El. While the summary Program Review Committee records tendered by the defendants for this time period do not seem to reflect that Washington-El specifically raised the particular

concerns which he now asserts in this lawsuit, Washington-El has submitted records of various PRC appeals that he pursued under DC–ADM 802 during this time frame, between December 2010 and March 2011. These appeal documents, which were prepared by Washington-El prior to the filing of this lawsuit and are contemporaneous with the advice Washington-El received from Mr. Damiter, appear to detail the condition of confinement claims which Washington-El now makes in this lawsuit and show that Washington-El sought to grieve these matters under AD–DCM 802 in 2010 and 2011.

In addition, the defendants support their current argument that Washington-El's failure to comply with DC–ADM 804 with respect to these condition of confinement claims in January of 2011 constitutes a failure to exhaust by noting that Washington-El continued to utilize this general grievance procedure to address a variety of institutional complaints between 2010 and 2012. The defendants assert that this continued use of the general grievance process by Washington-El shows that he was aware of the necessity of using that same process for his condition of confinement claims. Washington-El's rejoinder to this argument is a simple one: He avers that he used the general grievance process for claims unrelated to the conditions of his administrative custody confinement, but following Damiter's guidance in early 2011 relied upon DC–ADM 802 to address the condition of confinement claims which he

now brings in this lawsuit.

It is against this factual backdrop that the defendants now argue that they have carried their burden of proof and persuasion on the affirmative defense of exhaustion of administrative remedies as a matter of law.  For the reasons set forth below, on the unique facts of this case where Washington-El was instructed in writing to follow a particular path in grieving these issues under DC–ADM 802, we disagree and recommend that the defendants' request to assert this affirmative defense as a matter of law be denied.

## III.   Discussion

### A.   The PLRA Exhaustion Requirement

The defendants urge the Court to dismiss this case because the plaintiff has failed to fully exhaust the administrative remedies available to him under the prison's formal grievance policy.  In this case Washington-El's alleged failure to timely pursue these administrative remedies may have substantive significance for the plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Section 1997e's exhaustion requirement applies to a wide-range  of inmate

complaints, including damages claims like those made here grounded in alleged violations of the Eighth Amendment.  See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).

While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts.  This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented

from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

"Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." Small v. Camden Cnty., 728 F.3d 265, 268-69 (3d Cir. 2013). In accordance with the PLRA, in order to prevail on this affirmative defense a defendant must show that the prisoner failed to comply with exhaustion requirements with respect to any claim that arises in the prison setting, regardless of the type of claim asserted, or the relief sought.  See Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or some other wrong.");
Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").  As the statute's language makes clear, the exhaustion of available administrative remedies prior to filing suit is mandatory.  See Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court – or any other – to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.") (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)).

Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. See Small v. Camden Cnty., 728 F.3d 265, 271 (3d Cir. 2013) (judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010). Where this process entails fact-finding and resolution of factual disputes, the court may resolve the issue of exhaustion through an evidentiary hearing. As the court of appeals has observed:

> [J]ust as subject-matter jurisdiction, personal jurisdiction, and venue, exhaustion is a "threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time." Dillon, 596 F.3d at 272 (emphasis added); see Pavey, 544 F.3d at

741 ("Juries decide cases, not issues of judicial traffic control. Until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to."); cf. McCarthy v. Madigan, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (likening the doctrine of exhaustion of administrative remedies to "abstention, finality, and ripeness-that govern the timing of federal-court decisionmaking"); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51 n. 9, 58 S.Ct. 459, 82 L.Ed. 638 (1938) (describing exhaustion as a "rule of judicial administration"). . . . . [I]t is of no consequence that here, as is often the case, there are disputed facts that must be resolved in order to determine whether the claims were exhausted. See Bryant, 530 F.3d at 1373–74 (holding the district court properly acted as fact finder in resolving conflicting evidence that raised a genuine issue of material fact about whether administrative remedies were available to the prisoner plaintiffs); accord Messa, 652 F.3d at 309; Dillon, 596 F.3d at 271. Matters of judicial administration often require judges to decide factual disputes and the Seventh Amendment is not implicated as long as the facts are not bound up with the merits of the underlying dispute.

Small v. Camden Cnty., 728 F.3d 265, 269-70 (3d Cir. 2013)

Moreover, when assessing an exhaustion claim, it is important to note that the exhaustion requirement of the PLRA is one of "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 84 (2006). Failure to comply with the procedural requirements of the available grievance system will result in a claim being deemed procedurally defaulted. Nyhuis v. Reno, 204 F.3d 65, 90 (3d Cir. 2000); Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004). An inmate cannot circumvent the PLRA's exhaustion requirement by failing to properly exhaust the prison's administrative review process, or by waiting until such remedies are no longer available to him. Woodford, 548 U.S. at 95. However, if an inmate shows that the actions of prison officials directly caused

15

the inmate's procedural default of a grievance, the inmate will not be held to strict compliance with the exhaustion requirement. Brown v. Croak, 312 F.3d 109, 112-13. Likewise, "[w]here [the inmate] failed to receive even a response to the grievances addressing the . . . incidents, much less a decision as to those grievances, the [administrative remedy] process was unavailable to him." Small v. Camden Cnty., 728 F.3d 265, 273 (3d Cir. 2013).

As the Supreme Court has recently observed: "the PLRA contains its own, textual exception to mandatory exhaustion. Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, No. 15-339, 2016 WL 3128839, at *7 (U.S. June 6, 2016). When considering this statutory exception to the PLRA's exhaustion requirement, we are cautioned that: "the ordinary meaning of the word 'available' is  ' "capable of use for the accomplishment of a purpose," and that which "is accessible or may be obtained." ' 532 U.S., at 737–738, 121 S.Ct. 1819 (quoting Webster's Third New International Dictionary 150 (1993)); see also Random House Dictionary of the English Language 142 (2d ed. 1987) ('suitable or ready for use'); 1 Oxford English Dictionary 812 (2d ed. 1989) ('capable of being made use of, at one's disposal, within one's reach'); Black's Law Dictionary 135 (6th ed. 1990) ('useable'; 'present or ready for immediate

use'). Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.' Booth, 532 U.S., at 738, 121 S.Ct. 1819." Ross v. Blake, No. 15-339, 2016 WL 3128839, at *7 (U.S. June 6, 2016).

We are also enjoined by the Supreme Court to take a pragmatic approach to this issue of PLRA exhaustion and must consider exhaustion claims in light of "the real-world workings of prison grievance systems." Id. Adopting this pragmatic view, and examining exhaustion claims through a real-world lens, the Supreme Court has acknowledged that administrative remedies are effectively unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through . . . misrepresentation . . . ." Ross v. Blake, No. 15-339, 2016 WL 3128839, at *8 (U.S. June 6, 2016). Therefore, "[a]n administrative remedy is not 'available,' and therefore need not be exhausted, if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it. E.g., Dillon v. Rogers, 596 F.3d 260, 268 (5th Cir.2010); Curtis v. Timberlake, 436 F.3d 709, 712 (7th Cir.2005); Brown v. Croak, 312 F.3d 109, 112–13 (3d Cir.2002)." Pavey v. Conley, 663 F.3d 899, 906 (7th Cir. 2011). By extending the idea of unavailability of administrative remedies to instances involving erroneous advice by correctional staff to inmates, we understand the courts to have concluded that even

17

well-intentioned, but mistaken, guidance from correctional officials regarding administrative remedies may serve to make these remedies unavailable under the PLRA.

Ross v. Blake, No. 15-339, 2016 WL 3128839 (U.S. June 6, 2016) also illustrates one other challenge which confronts inmates who attempt to comply with the PLRA's exhaustion requirement–the proliferation of grievance processes addressing specific concerns. When prisoners are presented with multiple grievance procedures, each of which carries a potential penalty of procedural default under the PLRA, the consequences of an improvident choice can be grave. Those consequences, in turn, are heightened when the policies themselves change from time-to-time, as in this case. Indeed, this case aptly illustrates how revised prison policy pronouncements can create shifting administrative sands for grieving inmates. At the time of the events in this case, in early 2011, DC–ADM 802 prescribed a path for appeals of administrative custody decisions, but the policy statement did not clearly identify what matters were governed by DC–ADM 802. This ambiguity was later clarified on or about June 7, 2011, when DC-ADM 802 was amended to be the exclusive policy or administrative remedy available to inmates in administrative custody to pursue any issue relating to the placement, duration, conditions, or other circumstances of their administrative custody. (Id.) Thus, under the revised June, 2011 version of DC-ADM

18

802 Washington-El would have been required to raise these condition of confinement issues through the path prescribed by DC–ADM 802, and in January of 2011 Washington-El was expressly told by Mr. Damiter that he should raise these issues through DC–ADM 802.  Nonetheless, the defendants now argue that the proper procedure in January of 2011 would actually have been a grievance through DC–ADM 804, and seek to dismiss the plaintiff's claim for failing to follow this particular grievance path.

**B.   On the Unique Facts of this Case, Defendants Have Not Carried Their Burden of Proof on the Defense of Failure to Exhaust**

In considering this particular failure to exhaust claim, we acknowledge at the outset that the defendants bear the burden of proof on the affirmative defense that Washington-El failed to exhaust the administrative remedies which were available to him.  Indeed, it is undisputed that: "Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." Small v. Camden Cnty., 728 F.3d 265, 268-69 (3d Cir. 2013).

Further, as we have previously noted, the PLRA exhaustion issues in this case come before us on a unique, and in many ways uniquely compelling, factual record. Thus, it is entirely undisputed that, had Washington-El presented these concerns 6 months later, after June of 2011, he would have been fully justified in relying upon

DC–ADM 802 to satisfy his PLRA exhaustion requirement since by June 2011 that policy was explicitly prescribed as the path for resolving all administrative custody condition of confinement concerns. (Doc. 105, Ex D.) Furthermore, it is uncontested that in January of 2011, when Washington-El asked prison officials how to proceed with a grievance relating to the conditions of his administrative custody confinement, he was told by Mr. Damiter, the grievance coordinator at SCI Frackville that: "All those issues are covered under the 802. Your requests should be done at PRC and as previously been told your appeal rights are every 90 days by policy." (Id.) It is also essentially uncontested that, once Washington-El followed this advice and pursued relief under DC–ADM 802, the general grievance policy became effectively unavailable to him since he could not complete a DC–ADM 802 appeal within the strict time frames prescribed by DC–ADM 804 for commencing a general prison grievance.

Under these circumstances, we find that Washington-El cannot now be faulted, or face procedural default under the PLRA, for following the express written directions of Mr. Damiter. In short, we conclude that this case presents one of those rare and extraordinary instances in which, "[a]n administrative remedy is not 'available,' and therefore need not be exhausted, [because] prison officials erroneously inform[ed] an inmate that the remedy d[id] not exist or inaccurately

describe[d] the steps he need[ed] to take to pursue it. E.g., Dillon v. Rogers, 596 F.3d 260, 268 (5th Cir.2010); Curtis v. Timberlake, 436 F.3d 709, 712 (7th Cir.2005); Brown v. Croak, 312 F.3d 109, 112–13 (3d Cir.2002)." Pavey v. Conley, 663 F.3d 899, 906 (7th Cir. 2011). We reach this conclusion without in any way suggesting that Mr. Damiter acted inappropriately in providing this advice to Washington-El. Quite the contrary, far from being improper , Mr. Damiter's advice was actually very prescient, since it anticipated what became an explicit Departmental direction under DC–ADM 802 six months later, in June of 2011.

We also conclude that the defendants cannot carry their burden of proof and persuasion on this affirmative defense by pointing to the fact that Washington-El properly pursued other grievances under the general grievance policy, DC–ADM 804, at the time of these events. While proof of use and experience with the general grievance policy would typically be highly probative evidence demonstrating an inmate's familiarity with those policies, and will often sustain an affirmative defense of failure to exhaust, here we have a unique factor which largely negates this argument. It is clear that, for his condition of confinement claims, Washington-El was specifically instructed to use DC–ADM 802. In the face of this explicit direction, we cannot conclude as a matter of law that the plaintiff's familiarity with the general grievance policy should have led him to refuse to obey the instruction he received and

caused him to submit these grievances under DC–ADM 804.

Finally, while the question is a close one, we find that the defendants have not carried their burden of proving that Washington-El failed to grieve these matters under DC–ADM 802 in early 2011. On this score, we acknowledge that Mr. Kovalchik testified that he did not recall Washington-El raising these concerns during PRC meetings in early 2011, and we concede that the PRC's summary notes do not reflect discussion of these matters. However, the written appeals that Washington-El submitted pursuant to DC–ADM 802 between December 2010 and March 2011 plainly identify these condition of confinement issues as an on-going concern which the plaintiff was grieving with the PRC. Moreover, these PRC grievance appeals all pre-dated the filing of this complaint, and reflect the plaintiff's contemporaneous concerns in a way which strongly suggests that Washington-El was actively seeking relief due to the conditions of his prolonged administrative custody confinement. Given the plaintiff's repeated and contemporaneous expressions of these concerns in his PRC decision appeals, we cannot conclude that the defendants have carried their burden of proof and persuasion on this element of the affirmative defense of failure to exhaust administrative remedies by showing that he failed to pursue these matters under DC–ADM 802. Therefore, we recommend that the defendants' efforts to assert this defense as a matter of law be denied.

In reaching this recommendation, however, we emphasize the exceedingly narrow and fact-specific nature of our recommendation. This recommendation applies only to the unique circumstances of this particular case, where: (1) an inmate followed the express written direction of prison staff in attempting to satisfy this grievance requirement, and (2) chose a course recommended by staff which within a few months became the mandatory exhaustion procedure authorized by prison rules for the concerns voiced by this prisoner.

## IV.   <u>Recommendation</u>

For the foregoing reasons, IT IS RECOMMENDED that the defendants' claim that they are entitled to assert the affirmative defense of failure to exhaust under the PLRA as a matter of law to bar the plaintiffs' conditions of confinement claims be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 21st day of June, 2016.

_S/Martin C.  Carlson_
Martin C. Carlson
United States Magistrate Judge