# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRIS WASHINGTON-EL,     :
    Plaintiff           :     CIVIL NO. 3:12-CV-1979
                          :
    v.                :     (JUDGE NEALON)
                          :     (MAGISTRATE JUDGE CARLSON)
ROBERT COLLINS, ET AL.,    :
    Defendants        :

**FILED**
**SCRANTON**

SEP 2 2 2016

## <u>MEMORANDUM</u>



Per. _____
DEPUTY CLERK

On October 3, 2012, Plaintiff, Chris Washington-El, an inmate currently confined at the State Correctional Institution in Huntingdon, Pennsylvania ("SCI-Huntingdon"), filed a complaint pursuant to 42 U.S.C. § 1983 based on violations of his Eighth Amendment conditions of confinement right, which allegedly occurred beginning in November of 2009 while he was housed at the State Correctional Institution in Frackville, Pennsylvania ("SCI-Frackville"). (Doc. 1). On October 17, 2012, Plaintiff filed an amended complaint against the same Defendants. (Doc. 7). The case was referred to Magistrate Judge Martin C. Carlson on January 22, 2013 via verbal order.

On February 4, 2013, Defendants filed a motion to dismiss arguing, <u>inter</u> <u>alia</u>, that Plaintiff failed to exhaust administrative remedies, and that certain claims pre-dating October 2010 were time-barred. (Docs. 18 and 19). On June 29, 2013, Magistrate Judge Martin C. Carlson issued an initial Report and Recommendation,

in which he recommended that Defendants' motion be granted with respect to dismissing the claims that pre-dated October of 2010 because these claims were time-barred, but that the motion to dismiss be denied in all other respects. (Doc. 31). On August 20, 2013, the Undersigned issued a Memorandum and Order ("M&O"), adopting the Report and Recommendation, in part, but denying in its entirety Defendants' motion to dismiss based on the continuing violations doctrine. (Docs. 35 and 36).

On September 19, 2013, Defendants filed an Answer to Plaintiff's Amended Complaint. (Doc. 38). Discovery was conducted, and, on March 10, 2014, Defendants filed a motion for summary judgment and supporting brief. (Docs. 54, 55, and 56). On July 16, 2014, Plaintiff filed a brief in opposition to the motion for summary judgment. (Doc. 69). On August 29, 2014, Defendants filed a reply brief. (Doc. 83). On September 26, 2014, after having his motion to file a sur reply brief in opposition to Defendants' reply brief granted, Plaintiff filed a sur reply brief. (Doc. 86). On December 1, 2014, Magistrate Judge Carlson issued a second Report and Recommendation, recommending the following: (1) Defendants be entitled to summary judgment on Plaintiff's due process claim set forth in count two (2) of the amended complaint; (2) Defendants be entitled to summary judgment on Plaintiff's RLUIPA claim set forth in count four (4) of the

amended complaint; (3) Defendants' summary judgment motion be denied with regards to all other respects; and (4) the matter be remanded to Magistrate Judge Carlson for purposes of conducting a plenary hearing, and preparing a Report and Recommendation, on whether Plaintiff exhausted his remaining conditions of confinement claims. (Doc. 89, pp. 43-44). Objections were due by December 18, 2014. (Doc. 89). Defendant failed to file objections by this date, and instead, on December 29, 2014 and December 31, 2014, filed two (2) separate motions for an extension of time to file objections, which were subsequently granted. (Docs. 90-92). On January 16, 2015, Defendant filed objections. (Doc. 93). On March 15, 2015, this Court issued a Memorandum and Order adopting the second Report and Recommendation. (Docs. 97 and 98).

On April 27, 2015, an evidentiary hearing was held on Defendants' affirmative defense that Plaintiff failed to exhaust administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA"). On June 21, 2016, Magistrate Judge Carlson issued a third Report and Recommendation ("R&R"), recommending that this Court deny Defendants' affirmative defense that Plaintiff failed to exhaust administrative remedies under the PLRA as a matter of law, which would then bar Plaintiff's conditions of confinement claims. (Doc. 122). On July 5, 2016, Defendants filed objections to the R&R and an accompanying

Memorandum of Law. (Docs. 123 and 124). For the foregoing reasons, the R&R will be adopted, Defendants' affirmative defense that Plaintiff failed to exhaust his administrative remedies under the PLRA will be denied, and the case will be remanded back to Magistrate Judge Carlson for further proceedings.

## Standard of Review

When objections to a report and recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the district court must make a de novo review of those portions of the report to which specific objections are made. See Henderson v. Keisling, 386 Fed. Appx. 164, 166 (3d Cir. 2010) (explaining that "only those 'specific objections' made by [the plaintiff] must be separately considered by the District Court") (citing Goney v. Clark, 749 F.2d 5, 67 (3d Cir. 1984) ("providing a complete de novo determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process")). The written objections must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." M.D. Pa. Local Rule 72.3. In the absence of specific objections, review may properly be limited to ascertaining whether there is clear error that not only affects the rights of the plaintiff, but also seriously affects the integrity, fairness, or public reputation of

4

judicial proceedings.  See Sanders v. Downs, 2013 U.S. Dist. LEXIS 89743, *8-9

(M.D. Pa. 2013) (Caputo, J.) (explaining that the court reviews those portions of

the R&R to which specific objections are made de novo, while the "remainder of

the R&R is reviewed for clear error"); Cruz v. Chater, 990 F. Supp. 375, 377

(M.D. Pa. 1998) (Vanaskie, J.).  The district court may accept, reject, or modify, in

whole or in part, the findings and recommendations contained in the report.  28

U.S.C. § 636(b)(1)(C); M.D. Pa. Local Rule 72.3.

## Discussion

Initially, Magistrate Judge Carlson outlines the aforementioned procedural

history of the case.  (Doc. 122, pp. 1-4).  Magistrate Judge Carlson then explains

the detailed factual background and crux of the exhaustion of administrative

remedies issue at hand:

> During the period relevant to this action, the Department of
> Corrections maintained distinct administrative processes for
> inmates to use to grieve issues relating to their conditions of
> confinement generally, which typically are pursued
> through the inmate grievance system, DC-ADM 804, and a
> separate policy relating to administrative custody procedures
> under DC-ADM 802, which was available for inmates to
> challenge initial and on-going administrative custody
> placement actions. (Doc. 105, Exs. A-D).  This administrative
> custody policy statement, DC–ADM 802, in turn, prescribed a
> three-tier review process for inmate grievances relating to their
> administrative custody status. Under DC–ADM 802, inmates
> were directed to first raise their concerns with the Program

Review Committee (PRC), which oversees that institution's Restricted Housing Unit. Unresolved concerns could then be appealed in writing to the facility manager. Finally, inmates who were dissatisfied with the facility manager's response to an administrative custody dispute could appeal in writing to the Department of Corrections' chief hearing examiner. (Doc. 105, Ex. C). While DC–ADM 802 prescribed this path for appeals of administrative custody decisions during the period from 2009 through 2011, at the time that Washington-El was confined at SCI-Frackville, this policy statement originally did not clearly identify what substantive matters were governed by DC–ADM 802. This ambiguity was later clarified on or about June 7, 2011, when DC-ADM 802 was amended to provide that this procedure was the exclusive policy or administrative remedy available to inmates in administrative custody to pursue any issue relating to the placement, duration, conditions, or other circumstances of their administrative custody. (Id.).

In addition to DC–ADM 802, under a separate policy statement, DC-ADM 804, the Department of Corrections maintained a general grievance system that offered a three-phase grievance and appeals procedure. (Doc. 105 Exs. A and B, DC-ADM 804). Pursuant to DC-ADM 804, inmates first file grievances with the Facility Grievance Coordinator at the facility where the events upon which the complaint is based occurred. If the inmate is unsatisfied with the initial review of his grievance, he may appeal the decision to the Facility Manager (Superintendent). Upon receiving a decision from the Superintendent, the inmate may file an appeal with the Secretary's Office of Inmate Grievances and Appeals (SOIGA) within 15 days of the Superintendent's decision. (Id.).

The DC-ADM 804 grievance process was implemented as a policy that articulated a formal grievance procedure, a "forum for review," and an avenue of appeal. The DC-ADM 804 system was instituted to ensure that inmates had a general avenue to resolve specific problems, and provided that this

administrative avenue consisted of an initial review and then two tiers of appellate review, imposing different levels of responsibilities on the inmates during each stage of the administrative process. In order to exhaust administrative remedies in accordance with this three-step process prescribed by DC–ADM 804, inmates must file grievances and appeals in the place, time, and manner that the DOC's administrative rules require. (Id., DC-ADM 804).

The existence of these two parallel grievance systems, and the questions these parallel procedures created concerning the proper path for administrative custody inmates like Washington-El to travel in grieving certain disputes with correctional staff, lies at the heart of this exhaustion claim. This question was cast in sharp relief by the parties in a January 2011 exchange between Washington-El, and Peter Damiter, the corrections superintendent's assistant at SCI-Frackville during Washington-El's incarceration at that facility. (Tr. 7). As the superintendent's assistant at SCI-Frackville, Mr. Damiter was the prison grievance coordinator at this facility, and processed inmate grievances. (Id.). In the course of these duties, Mr. Damiter would also field questions from inmates regarding prison grievance processes and procedures.

On January 21, 2011, Washington-El wrote to Mr. Damiter to clarify what forms he should use to challenge a myriad of issues he claimed to have with staff and his ongoing restrictive custody assessment and placement, stating:

> In terms of my AC having an adverse affect on my
> mental health, it being an adverse act of retaliatory
> treatment, my religious exercise and religious
> activities on AC, equal treatment and conditions of
> confinement on AC – should they be addressed
> through the 802 procedures , PRC and AC
> Appeals or by grievance? Thank you for your

7

attention in this matter and I'll wait to hear back
from you.

(Doc. 115, Ex. G). On January 26, 2011, Mr. Damiter
responded in writing to Washington-El's inquiry, stating: "All
those issues are covered under the 802. Your requests should
be done at PRC and as previously been told your appeal rights
are every 90 days by policy." (Id.). Thus, with respect to these
particular administrative custody concerns which now form the
basis of many of Washington-El's claims in this lawsuit, Mr.
Damiter's response directed Washington-El to use the
administrative grievance path prescribed by DC–ADM 802.

Damiter and Washington-El also appear to agree that the
choice of DC–ADM 802 as the administrative path to address
these grievances as a practical matter foreclosed any
subsequent review of these issues pursuant to the general
grievance policy, DC–ADM 804. This outcome is a natural
consequence of the grievance deadlines imposed by DC–ADM
804. By the time that an administrative custody inmate pursued
relief under DC–ADM 802, the deadline for filing a grievance
under DC–ADM 804 would have passed and that grievance
would have been denied as untimely, making the general
grievance procedure effectively unavailable to the prisoner.
Indeed, Mr. Damiter acknowledged as much at the hearing
conducted in this case, stating that if an inmate had pursued
relied under DC–ADM 802, and then filed a tardy grievance
under DC–ADM 804 he "would have rejected it." (Tr. p.36).

In response to Washington-El's contention that he had been
expressly instructed to utilize DC–ADM 802 in January 2011
to address these concerns relating to his long-term
administrative custody housing, the defendants have advanced
two factual assertions. First, relying on the recollection of
Anthony Kovalchik, a deputy superintendent at SCI-Frackville
who participated in Restricted Housing Unit program reviews

8

for Washington-El and records of those reviews, (Tr. 46-80; Doc. 105, Ex. H), the defendants contended that Washington-El never actually pursued any of these issues under DC–ADM 802, at the time he received this advice from Mr. Damiter in January of 2011.

This argument draws some support from evidence presented to the court by the defendants, but is also rebutted by other evidence tendered by Washington-El. While the summary Program Review Committee records tendered by the defendants for this time period do not seem to reflect that Washington-El specifically raised the particular concerns which he now asserts in this lawsuit, Washington-El has submitted records of various PRC appeals that he pursued under DC–ADM 802 during this time frame, between December 2010 and March 2011. These appeal documents, which were prepared by Washington-El prior to the filing of this lawsuit and are contemporaneous with the advice Washington-El received from Mr. Damiter, appear to detail the condition of confinement claims which Washington-El now makes in this lawsuit and show that Washington-El sought to grieve these matters under AD–DCM 802 in 2010 and 2011.

In addition, the defendants support their current argument that Washington-El's failure to comply with DC–ADM 804 with respect to these condition of confinement claims in January of 2011 constitutes a failure to exhaust by noting that Washington-El continued to utilize this general grievance procedure to address a variety of institutional complaints between 2010 and 2012. The defendants assert that this continued use of the general grievance process by Washington-El shows that he was aware of the necessity of using that same process for his condition of confinement claims. Washington-El's rejoinder to this argument is a simple one: He avers that he used the general grievance process for claims unrelated to the conditions of his administrative custody confinement, but

9

> following Damiter's guidance in early 2011 relied upon
> DC–ADM 802 to address the condition of confinement claims
> which he now brings this suit.
>
> It is against this factual backdrop that the defendants now argue
> that they have carried their burden of proof and persuasion on
> the affirmative defense of exhaustion of administrative
> remedies as a matter of law.

(Doc. 122, pp. 7-11). Magistrate Judge Carlson then sets forth the PLRA

exhaustion requirement standard of review, which is herein adopted. (Id. 11-19).

Ultimately, Magistrate Judge Carlson recommends that Defendants' affirmative

defense that Plaintiff failed to exhaust his administrative remedies be denied

because, as explained by Magistrate Judge Carlson:

> Under these circumstances, we find that [Plaintiff] cannot now
> be faulted or face procedural default under the PLRA, for
> following the express written directions of Mr. Damiter.  In
> short, we conclude that this case presents one of those rare and
> extraordinary instances in which an administrative remedy is
> not available, and therefore not need be exhausted, [because]
> prison officials erroneously inform[ed] an inmate that the
> remedy d[id] not exist or inaccurately describe[d] the steps he
> need[ed] to take to pursue it. e.g., Dillon v. Rogers, 596 F.3d
> 260, 268 (5th Cir. 2010); Curtis v. Timberlake, 436 F.3d 709,
> 712 (7 th Cir. 2005); Brown v. Croak, 312 F.3d 109-112-13 (3d
> Cir. 2002).

(Id. at 20-21) (citations omitted).  Magistrate Judge Carlson also concludes that

Defendants did not meet their burden of proving their affirmative defense of

exhaustion of administrative remedies by highlighting the fact that Plaintiff was able to properly pursue other grievances under DC-ADM 804 because "[w]hile proof of use and experience with the general grievance policy would typically be highly probative evidence demonstrating an inmate's familiarity with those policies . . . here we have an unique factor which largely negates this argument," namely that Plaintiff was specifically instructed by the grievance coordinator to use DC-ADM 802 for the claims at hand. (Doc. 122, p. 21).

Lastly, Magistrate Judge Carlson explians that Defendants did not prove that Plaintiff did not file grievances under DC-ADM 802 because the "written appeals that Washington-El submitted pursuant to DC-ADM 802 between December 2010 and March 2011 plainly identify these condition of confinement issues as an on-going concern which the plaintiff was grieving with the PRC." (Id. at 22).

Defendants' object to the R&R on the following grounds: (1) the recommendation is inconsistent with other opinions issued by the Magistrate Judge that found "an inmate's inconsistent excuses alone were enough to warrant summary judgment;" (2) "[t]he Court should reject the [R&R's] statement that Plaintiff followed the course as instructed by corrections officials;" (3) "[t]he

11

Court should reject the [R&R's] statements that [DC-ADM 802] did not clearly identify what matters it covered, that it was ambiguous and later clarified when it was revised in June 2011;" (4) "[t]he Court should reject the [R&R's] statement that Damiter and Plaintiff agreed pursuit of remedies through 802 foreclosed use of 804;" (5) "[t]he Court should reject the [R&R's] reliance on Plaintiff's use of records from December 2010;" (6) "[t]he Court should reject the [R&R's] reliance of Damiter's advice anticipated the June 2011 change in policy;" and (7) "[t]he Court should reject the [R&R's] conclusion [that] Plaintiff's continued use of 804 grievance policy does not help DOC Defendants to carry their burden of proof." (Doc. 124, pp. 1-14).

In addressing these objections in light of the PLRA standard of review discussed in detail in the R&R by Magistrate Judge Carlson, that is herein adopted, it is evident that regardless of whether Plaintiff offered inconsistent statements, of whether DC-ADM 802 was clear on what matters it covered, of whether Damiter's advise to Plaintiff to use DC-ADM 802 foreclosed the use of DC-ADM 804, of whether Plaintiff relied on records from December 2010, of whether Damiter's advice anticipated the June 2011 change in policy, or of whether Plaintiff's continued use of DC-ADM 804 did not help Defendants carry

their burden of proof, the bottom line is that Plaintiff presented evidence that he

was instructed by Mr. Damiter, the prison grievance coordinator, that he should

use DC-ADM 802 for his conditions of confinement claims that are raised in the

instant complaint, and that by following the grievance coordinator's instructions,

he then missed the deadline to file a grievance under DC-ADM 804.  While it is

acknowledged that there is a mandatory exhaustion requirement that states that an

inmate must exhaust all available administrative remedies under the PLRA, "[a]n

administrative remedy is not 'available,' and therefore need not be exhausted, if

prison officials erroneously inform an inmate that the remedy does not exist or

inaccurately describe the steps he needs to take to pursue it.  e.g., Dillon v. Rogers,

596 F.3d 260, 268 (5th Cir. 2010; Curtis v. Timberlake, 436 F.3d 709, 712 (7th

Cir. 2005); Brown v. Croak, 312 F.3d 109, 112-13 (3d Cir. 2002)." Pavey v.

Conley, 663 F.3d 899, 906 (7 th Cir. 2011).  Therefore, regardless of the other

findings made by Magistrate Judge Carlson, this Court finds no amount of

evidence presented by Defendants can surpass the fact that Plaintiff was advised

by the prison grievance coordinator to specifically use DC-ADM 802, which then

had then time-barred him from filing a DC-ADM 804 grievance for the claims at

hand.  The advice provided by Mr. Damiter to Plaintiff that he should use DC-

ADM 802 for the present conditions of confinement claims at issue equates to unavailability of an administrative remedy and thus excuses the exhaustion requirement, albeit in very narrow factual circumstances as the one at hand. As such, because Plaintiff did not have an available administrative remedy, this Court will overrule Defendants' objection, adopt the R&R, and deny Defendants' affirmative defense that Plaintiff failed to exhaust any available administrative remedies.

## Conclusion

After review of the R&R, and in consideration of Defendants' objections, for the reasons discussed herein, Defendants' objections will be overruled, the R&R will be adopted, and Defendants' affirmative defense that Plaintiff failed to exhaust available administrative remedies will be denied. The matter will be remanded to Magistrate Judge Martin C. Carlson for further proceedings.

A separate Order will be issued.

Date: September 22, 2016

/s/ **William J. Nealon**
**United States District Judge**

14